UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DENNIS LAMAR JAMES, JR.,

    Plaintiff,

    v.

OAKLAND POLICE DEPARTMENT, et al.,

    Defendants.

Case No. 13-cv-00011-SI

**ORDER GRANTING DOCTOR-DEFENDANTS' MOTION TO DISMISS**

Re: Dkt. No. 59

Plaintiff Dennis Lamar James, Jr., a California prisoner, filed this *pro se* civil rights action under 42 U.S.C. § 1983 against several Oakland police officers, the Oakland Police Department, and the City of Oakland for the use of excessive force during his arrest, and four doctors for deliberate indifference to his medical and mental health needs after his arrest. Three of the four doctors now move to dismiss the complaint and the amendment to the complaint for failure to state a claim. This order **GRANTS** the motion to dismiss and GRANTS plaintiff leave to file a second amendment to his complaint alleging violations of California law.

**BACKGROUND**

The following allegations are taken from plaintiff's complaint and amendment to the complaint. Dkt. No. 1, Complaint; Dkt. No. 58, Amendment to Complaint.[1]

On February 19, 2012, plaintiff was admitted to Highland Hospital "merely for a few hours" to receive "medical and mental [health] treatment" following his arrest by the Oakland

---

[1] Due to an error at the courthouse, page 3 of the complaint was not scanned properly and is not part of the court record. Plaintiff must provide a replacement copy of page 3 of the complaint, i.e., the page that would have paragraphs 11 through 16 on it. Throughout this order, all pin cites are to the ECF-generated page numbers at the tops of the documents.

1  Police Department. Dkt. No. 1 at 5. Earlier in the day, police officers responded to a call of an
2  "adult male acting erratic." *Id.* at 2. Plaintiff alleges that he "was under psychosis." Dkt. No. 58
3  at 2. In the process of plaintiff's arrest, police officers allegedly tased plaintiff more than ten
4  times. Dkt. No. 1 at 3. After his arrest, plaintiff was transported by ambulance to Highland
5  Hospital. *Id.* at 5.

6  David English, M.D., Eugenia Kang, M.D., and Naomi Adler, M.D. (collectively, the
7  "doctor-defendants") worked at Highland Hospital. *Id.* at 4.[2] During plaintiff's hospital stay, "Dr.
8  English was the Trauma Physician, Dr. Kang was the Chief Resident and Dr. Adler was for
9  Mental." Dkt. No. 58 at 1-2.

10  Plaintiff alleges that he "was in need of serious medical attention and a psychiatric
11  treatment, but to no avail." Dkt. No. 1 at 5. He alleges that he was "unresponsive" and "had
12  numerous taser darts still stuck in him, had head injuries and a leg injury." Dkt. No. 58 at 1; Dkt
13  No. 1 at 5. Plaintiff alleges that he was "unconscious almost the whole hospital . . . stay." Dkt.
14  No. 58 at 2.

15  Plaintiff alleges that he "was examined and/or treated by several medical Doctors when
16  [he] was admitted to Highland Hospital merely for a few hours and was denied proper medical
17  care." Dkt. No. 1 at 5. Plaintiff alleges that the Highland Hospital doctors "failed to treat his
18  serious medical needs; leg injury and mental issues." *Id.* As a result, plaintiff claims that the
19  doctor-defendants provided medical care that did not meet "the standards of delivery of such
20  medical care in the State of California." *Id.* at 6.

21  In particular, plaintiff alleges that Dr. English determined that plaintiff was a "Level 1
22  Trauma" with a "GCS of 9." Dkt. No. 58 at 2. Plaintiff alleges that he "needed to stay at least
23  overnight from the head injuries that he sustained, most likely concussion." *Id.*

24  Plaintiff further alleges that Dr. Kang "should have known and/or known to assist the
25  plaintiff once awoke and asked questions where pain was." *Id.* (errors in original). But plaintiff
26  alleges "[n]o questions were ever asked, no toxicology tests ever taken since [plaintiff] could have

---

[2] A fourth doctor, Terrence H. Liu, M.D., is represented by a different attorney and has separately moved for summary judgment against plaintiff. *See* Dkt. No. 57.

been drugged involuntar[ily]," and "[n]o CT scan of knees were taken." *Id.*

Plaintiff alleges that Dr. Adler "should have known [and]/or kn[ew] by his medical record" that plaintiff was "a mentally disabled person." *Id.* Plaintiff also alleges that he was "under psychosis from the beginning of a 911 call." *Id.* Plaintiff alleges that "Dr. Adler should have placed [plaintiff] under a psychiatric hold and evaluation for at least 72 hours. This violated civilized standards of decency and involved the unnecessary infliction of pain." *Id.* Plaintiff further alleges that he was "in a wheelchair for several months." *Id.*

Plaintiff attaches medical records as exhibits to his amendment to the complaint. The medical records show that when plaintiff arrived, he "was not phonating," i.e., not making sounds. *Id.* at 6. The medical records also state that plaintiff had an "altered mental status," a GCS of 9, taser darts embedded in his skin, a broken right incisor, and abrasions to his face, knees, toes, wrists, knuckles, and right shoulder. *Id.* at 6-7. The records indicate that a chest x-ray and CT scans of plaintiff's head, face, C-spine, chest, abdomen, and pelvis were taken—all of which were negative. *Id.* at 7. The records also reflect that his abrasions were washed. *Id.*

The court previously granted a motion to dismiss the 42 U.S.C. § 1983 claims against the doctor-defendants because plaintiff failed to allege facts showing what each doctor-defendant did or failed to do in violation of plaintiff's constitutional rights. Dkt. 35 at 3. Plaintiff filed an amendment to his complaint, and doctor-defendants again move to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. No. 58; Dkt. No. 59.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss on the ground that there is a "failure to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court "must accept as true all of the factual allegations contained in the complaint." *Erickson*

3

*v. Pardus*, 551 U.S. 89, 94 (2007). But the court is not required to accept as true allegations that are legal conclusions, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988, *amended*, 275 F.3d 1187 (9th Cir. 2001). Also, the court must construe *pro se* pleadings liberally. *Hebbe v. Pliler*, 627 F.3d 338, 341-42 (9th Cir. 2010).

As a general rule, the court may not consider materials beyond the pleadings when ruling on a Rule 12(b)(6) motion. *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001). However, pursuant to Federal Rule of Evidence 201, the court may take judicial notice of "matters of public record," such as prior court proceedings. *Id.* at 688-89. The court may also consider "documents attached to the complaint [and] documents incorporated by reference in the complaint . . . without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

If the court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

## DISCUSSION

### I.   42 U.S.C. § 1983 Claims

Dr. English, Dr. Kang, and Dr. Adler (collectively, the "doctor-defendants) move to dismiss the 42 U.S.C. § 1983 claim against them, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim of deliberate indifference to plaintiff's medical and mental health needs. Dkt. No. 59 at 3.

Deliberate indifference to an arrestee's medical and mental health needs is a violation of the Due Process Clause, rather than the Eighth Amendment violation that results from deliberate indifference to a prisoner's needs. *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1187 (9th Cir. 2002). With regard to those medical and mental health needs, the "due process clause imposes, at

4

a minimum, the same duty the Eighth Amendment imposes: 'persons in custody ha[ve] the established right to not have officials remain deliberately indifferent to their serious medical needs.'" *Id.* (citation omitted). To state a claim for deliberate indifference against each of the doctor-defendants, plaintiff must demonstrate two elements: (1) a "serious medical need"; and (2) "the defendant's response to the need was deliberately indifferent." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Although plaintiff plausibly alleges serious medical needs, the complaint and amendment to the complaint fail to allege sufficient facts that any of the doctor-defendants' responses were deliberately indifferent.

### A. Serious Medical Needs

To establish a serious medical need, plaintiff must show that "the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997), (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain" indicate a serious medical need. *Id.* at 1059-60. A mental health condition may constitute a serious medical need. *Doty v. Cnty. of Lassen*, 37 F.3d 540 (9th Cir. 1994).

Plaintiff's mental condition and injuries included those "that a reasonable doctor . . . would find important and worthy of comment or treatment," indicating serious medical needs. *McGuckin*, 974 F.2d at 1059. In the medical records attached to the amendment to the complaint, doctors noted plaintiff's medical conditions: an "altered mental status," a GCS of 9, a failure to phonate, the presence of taser darts embedded in his skin, a broken right incisor, and abrasions to his face, knees, toes, wrists, knuckles, and right shoulder. Dkt. No. 58 at 6-7. The records also reveal treatment steps taken, such as an x-ray, CT scans, and cleaning plaintiff's abrasions. *Id.* at 7. Thus, the complaint and amendment to the complaint plausibly allege that plaintiff had serious medical needs when he arrived at Highland Hospital.

**B. Deliberately Indifferent Response to Serious Medical Needs**

The second element—a defendant's deliberately indifferent response to the serious medical need—is met only if a defendant "knows of and disregards an excessive risk to [arrestee] health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* A 42 U.S.C. § 1983 claim for deliberate indifference is not stated when a complaint alleges only "an 'inadvertent [or negligent] failure to provide adequate medical care.'" *Jett*, 439 F.3d at 1096 (alteration in original). Rather, "there must be a *conscious disregard* of a serious risk of harm for deliberate indifference to exist." *Toguchi v. Chung*, 391 F.3d 1051, 1059 (9th Cir. 2004) (emphasis in original).

Similarly, "a plaintiff's showing of nothing more than a 'difference of medical opinion' as to the need to pursue one course of treatment over another [is] insufficient . . . to establish deliberate indifference." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)). Instead, a plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances, and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." *Id.*

Lastly, plaintiff must allege that he was harmed because of the deliberate indifference. *Jett*, 439 F.3d at 1096. But a showing of "substantial" harm is not required. *Id.* Overall, "[d]eliberate indifference is a high legal standard." *Toguchi*, 391 F.3d at 1060.

Doctor-defendants argue that plaintiff did not state sufficient facts to plausibly allege that (1) the doctor-defendants acted with deliberate indifference, and (2) plaintiff suffered harm as a result. Dkt. No. 59 at 9. Because each doctor-defendant's liability turns on his or her own response to plaintiff's medical needs, the court analyzes plaintiff's allegations regarding each defendant separately.

**1. Dr. David English**

Plaintiff alleges that Dr. English, a trauma physician, determined that plaintiff was a "Level 1 Trauma" and had a "GCS of 9." Dkt. No. 58 at 2. Additionally, plaintiff alleges that he

6

"needed to stay at least overnight from the head injuries he sustained, most likely concussion." *Id.* These allegations demonstrate only a difference of opinion. Plaintiff failed to state facts alleging that Dr. English both knew of and consciously disregarded a substantial risk of serious harm to plaintiff if he was not kept overnight. *See Farmer*, 511 U.S. at 837; *Toguchi*, 391 F.3d at 1059. Plaintiff also failed to allege facts showing that the course of treatment that Dr. English chose was "medically unacceptable" and chosen in conscious disregard of an excessive risk to plaintiff. *Jackson*, 90 F.3d at 332. Lastly, plaintiff did not allege that he suffered any harm because Dr. English did not admit plaintiff overnight. *See Jett*, 439 F.3d at 1096. Thus, plaintiff failed to state a claim for deliberate indifference against Dr. English.

### 2. Dr. Eugenia Kang

Plaintiff claims that Dr. Kang, the Chief Resident, failed to ask plaintiff where his pain was, or to run toxicology tests even though plaintiff "could have been drugged involuntar[ily]." Dkt. No. 58 at 2. He also contends that he needed a CT scan of his knees. *Id.* Similar to his claims against Dr. English, plaintiff failed to allege that Dr. Kang knew of and consciously disregarded an excessive risk to plaintiff's health. *See Farmer*, 511 U.S. at 837; *Toguchi*, 391 F.3d at 1059. Plaintiff's conclusory assertions that he needed a toxicology test and CT scan of his knees suggest at most a difference of opinion, as he did not allege that the failure to do either was "medically unacceptable" and chosen in conscious disregard of a serious risk to him. *Jackson*, 90 F.3d at 332. Also, plaintiff failed to allege that he was harmed because Dr. Kang did not ask where his pain was, run toxicology tests, or take a CT scan of his knees. *See Jett*, 439 F.3d at 1096. Thus, plaintiff failed to state a claim for deliberate indifference against Dr. Kang.

### 3. Dr. Naomi Adler

Plaintiff states that Dr. Adler, allegedly tasked with assessing plaintiff's mental health, "should have known [and]/or kn[ew]" from his medical record that he was "a mentally disabled person." Dkt. No. 58 at 2. Plaintiff further alleges that he "was under psychosis," that "Dr. Adler should have placed [him] under a psychiatric hold and evaluation for at least 72 hours," and that

7

1     her failure to do so "violated civilized standards of decency and involved the unnecessary
2     infliction of pain." Dkt. No. 58 at 2.

3         Plaintiff fails to plausibly allege that Dr. Adler knew of and consciously disregarded a
4     substantial risk of serious harm to plaintiff. *See Farmer*, 511 U.S. at 837; *Toguchi*, 391 F.3d at
5     1059. The medical records that plaintiff attached to his amendment to the complaint reflect that
6     plaintiff's previous medical history could not be obtained. Dkt. No. 58 at 6. Although the court
7     must accept as true all factual allegations, it is not required to accept as true allegations that are
8     unwarranted deductions of fact. *See Erickson,* 551 U.S. at 94; *Sprewell*, 266 F.3d at 988. Thus,
9     the court does not need to accept as true the allegation that Dr. Adler knew of plaintiff's mental
10    needs based on his medical record. *See* Dkt. No. 58 at 2.

11        Also, plaintiff did not allege that Dr. Adler knew that plaintiff "was under a psychosis,"
12    and consciously disregarded any risks to plaintiff by not placing him under a psychiatric hold. *See*
13    *id.*; *Jackson*, 90 F.3d at 332. Nor did plaintiff specify how he was harmed: he only conclusorily
14    alleged that the failure to place him in a psychiatric hold harmed him. Dkt. 58 at 2; *see Jett*, 439
15    F.3d at 1096. Thus, plaintiff failed to state a claim for deliberate indifference against Dr. Adler.

16        Lastly, plaintiff did receive medical care from the doctor-defendants. His GCS level was
17    determined. Dkt. No. 58 at 6. His abrasions were washed. *Id.* at 7. A chest x-ray and CT scans
18    of plaintiff's head, face, C-spine, chest, abdomen, and pelvis were done. *Id.* All of these images
19    were "negative" of further injuries. *Id.* Plaintiff failed to allege sufficient facts to show that the
20    treatment that he received or failed to receive was a deliberately indifferent response to his
21    medical needs and caused him harm. Thus, plaintiff failed to state a claim under 42 U.S.C. § 1983
22    against any of the doctor-defendants, and the motion to dismiss this claim is granted. Further
23    leave to amend will not be granted because it would be futile. The court already explained what
24    plaintiff needed to allege and he was unable or unwilling to do so.

26    **II.    Negligence Claims Under California State Law**

27        In its order granting doctor-defendants' first motion to dismiss, the court gave plaintiff
28    leave to file an amendment to the complaint to allege state law claims, in addition to his 42 U.S.C.

8

§ 1983 claims. Dkt. No. 35 at 4. Doctor-defendants' current motion to dismiss (Dkt. No. 59) and reply brief (Dkt. No. 63) acknowledge that plaintiff might be able to plead a claim against them for professional negligence.[3] And plaintiff indicates in his opposition to the motion to dismiss that he wishes to bring claims for professional negligence under California law. Dkt. No. 62 at 2. The court now grants plaintiff leave to file a second amendment to his complaint alleging these state law claims.

To bring a state law claim in federal court, plaintiff must invoke the court's supplemental jurisdiction under 28 U.S.C. § 1367 in his complaint. Plaintiff must also allege facts showing a basis for each element of professional negligence against each defendant. A claim for professional negligence consists of the same elements as a claim for ordinary negligence. *See Flowers v. Torrance Mem'l Hosp. Med. Ctr.*, 8 Cal.4th 992, 997-99 (Cal. 1994). The elements are: (1) a duty of care; (2) a breach of the duty of care; and (3) the breach was "the proximate or legal cause of the resulting injury." *Ladd v. Cnty. of San Mateo*, 12 Cal.4th 913, 917 (Cal. 1996). In the professional negligence context, the duty of care reflects "the knowledge, skill and care ordinarily possessed and employed by members of the profession in good standing." *Flowers*, 8 Cal.4th at 998. Lastly, to bring a claim for punitive damages against, plaintiff must state sufficient facts to allege that each defendant is "guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a).

## CONCLUSION

For the foregoing reasons, doctor-defendants' motion to dismiss plaintiff's 42 U.S.C. § 1983 for deliberate indifference of plaintiff's medical needs is **GRANTED**. The claims against the doctor-defendants under § 1983 are dismissed without leave to amend. Further leave to amend is not granted because it would be futile: the court previously informed plaintiff as to what he

---

[3] Doctor-defendants state that "[p]laintiff's limited allegations implicate, at most, an issue of professional negligence arising out of the rendition of medical services controlled by . . . California Code of Civil Procedure section 340.5." Dkt. No. 59 at 7. Also, they argue that plaintiff's "allegations relate strictly to the manner he was evaluated, diagnosed and treated, which under California law is properly analyzed under traditional principles of professional negligence." *Id.* Lastly, they claim that "plaintiff is merely dissatisfied with the results of the treatment he was provided which, at best, might constitute a claim based on alleged 'medical malpractice.'" Dkt. No. 63 at 3.

needed to allege to state a § 1983 claim and plaintiff was unable or unwilling to do so. Plaintiff may submit a second amendment to the complaint alleging a California state law claim for professional negligence against the doctor-defendants; any such amendment must be filed no later than October 30, 2015..

**IT IS SO ORDERED**.

Dated: September 28, 2015

SUSAN ILLSTON
United States District Judge